## Simmons *v.* Henderson *et al.*

Where a motion is made for the appointment of a receiver upon bill and answer, and the answer denies all the material obligations of the bill, a receiver will not be appointed.

A plaintiff is entitled to the appointment of a receiver only where the grounds laid in his bill are admitted by the answer, or are established by his proofs.

The probate court is the proper tribunal for the correction of an executor's account.

A court of chancery can base no action upon a matter over which it has no jurisdiction or control.

*Quere.*—Where an executor is charged with wasting an estate and appropriating the proceeds thereof to his own use, has the probate court power to place the estate in the hands of a receiver?

The bill in this case charges that Valentine C. Ray died in the latter part of the year 1836, leaving his last will and testament, which has been duly proven and recorded, in the probate court of Warren county. That by the will various legacies are bequeathed to different persons, and all the property both real and personal after the payment of all his debts and several legacies particularly specified, is devised to his wife, Martha, who is charged to be the same Martha who is one of the complainants, and who has since intermarried with complainant, James Simmons. It is charged that defendant Henderson and George W. McEnrath were nominated and appointed executors of said will, and "*all* the property directed to be kept together until all the debts were paid;" that Henderson qualified as executor and took possession of all the property, and McEnrath in the proper court renounced the appointment. That Henderson has managed the property in a wasteful and extravagant manner, and with a view to his own private gain; that he has borrowed large sums of money from banks as executor without authority and in violation of law; paid large sums for interest which he ought not to have paid; that he has shipped cotton to Liverpool through banks, instead of selling it at

home, and sold it in the European market for less than it would have brought in Vicksburg, and the estate has consequently been greatly injured, and sustained heavy losses; that he has purchased of John Henderson & Co. of which firm he was the acting partner, unnecessarily large quantities of goods and merchandise with the view of reaping large profits; that he has fed the corn and fodder of the estate to his own horses, oxen and mules; tha the has cut cord wood on the estate and sold it for his own gain; that he has rented and is cultivating about two hundred acres of the cleared land of the estate, to the serious injury of the legatees, and particularly the complainants; that he has received sufficient of the proceeds of the place, if prudently managed and applied, to have paid off all the debts and legacies ; that he has refused to receive on the place fifteen hands in addition to the force belonging to the estate; and that he has been guilty of numerous other acts of maladministration; that his securities are insolvent, &c., and prays to have the account surcharged and falsified, the property delivered up, &c. if the court thinks it has jurisdiction; and that a receiver be appointed and all the property delivered over to him, until the probate court of Warren county can hear and determine the matters and things set forth in a bill filed therein, and which has been continued from time to time between the same parties for the same objects, and in all respects similar to that now under consideration.

The answer of John Henderson admits all the allegations touching the death of Ray, his last will and testament, the various legacies bequeathed, the appointment of executors, qualification of one and renouncement of the other, &c.; admits that he borrowed money from and shipped cotton through the banks; but expressly denies that the estate has been injured thereby, or sustained any loss; and the answer charges that by the depreciation in the paper of the banks from which he borrowed money and shipped cotton by, the estate has been greatly benefitted, and moreover that the executor was obliged to borrow money, and on his own individual credit too, to prevent the estate's being sacrificed by a forced sale under mortgage; the answer denies that the estate has been wastefully, extravagantly or improperly managed, or that it has been managed with a view to the private gain of the executor, but

Simmons *v.* Henderson *et al.*

avers that he has managed it with prudence and care, and applied the whole proceeds faithfully to the payment of the debts and with an earnest desire to promote the interest as well of creditors as legatees; denies that he has used the corn and fodder of the estate in feeding the horses, oxen and mules belonging to him, or that he cut and sold wood for his own gain, or that he has received any cotton, even a single bale, which he has not faithfully and truly accounted for, or that he has been guilty of any act of maladministration. He charges that he has made annual settlements with the probate court of Warren county, and all his accounts have been approved and allowed, and his acts as executor have been ratified and confirmed by that court; denies that all the debts of the estate have been paid, and shows there are still debts unpaid amounting to more than twenty-one thousand dollars; denies the insolvency of his securities, and shows that they are, if not rich, amply able to pay any damages the complainants may sustain by the executor's mismanagement of the property, and avers his readiness to give any other or further security that may be required by the proper tribunal. Admits the estate has purchased a good deal of merchandise of John Henderson & Co. of which firm he was the acting partner, and that more than was actually necessary may have been bought, but avers it was nearly all purchased by complainants themselves while they were managing and controlling the estate, and bought too of the clerks in the store when he was not present. The answer denies every other material allegation in the bill.

The defendant insists that under his management thirty-five thousand dollars of the debts of the estate have been paid, and that repairs and improvements have been made on the plantation worth at least eight or ten thousand dollars. And, finally, the answer avers the executor's entire willingness to comply with any order the probate court of Warren may think it right and proper to make, but expressly denies the right of this court to revise and re-examine the settlements he has made with said probate court, or entertain said bill, or take any jurisdiction of this cause.

Hughes and Yerger, for complainants,

Moved for the appointment of a receiver on the bill and answer.

SHARKEY and MARSHALL *contra.*

The first and important question presented by the pleadings is, has this court jurisdiction of the cause? It certainly has not, if the complainants have a complete remedy and can obtain full and ample relief under the appropriate powers of the probate court of Warren county, as well upon the familiar principle that when one of two courts having concurrent jurisdiction takes cognizance of a cause and has it under investigation and advisement, or has once acted on it, the other is thereby divested of all jurisdiction over the same cause—as that it is forbidden by the fundamental law of our state. Agreeably to the allegations of the bill, the complainants are now seeking relief in said probate court. This court therefore will not, if it were permitted by the constitution, now go into an examination of the lenghty accounts of the defendant, and an investigation of all his acts as executor.

We have been repeatedly told by the High Court of Errors of this state, that of all matters testamentary, and in all cases arising under an administration or the grant of letters testamentary which concern the rights or the liabilities of the executor or administrator, the probate courts have exclusive jurisdiction; and that a court of equity will not in any case interpose unless the probate court be wholly incompetent to give relief, nor even then if the party has lost his remedy by his own laches. See the cases of Blanton *v.* King *et al.* 2 Howard, 861; Carmichael *et al. v.* Browder, 3 Ib. 255; Walker *et al. v.* McCrea, 4 Ib. 457; and Hurd *et ux. v.* Smith, 5 Ib. 562.

It will not, we presume, be contended that the probate court has not the power to require additional security of the executor, if that already given be not amply sufficient; or to remove him if he manages the estate in an extravagant, wasteful, improvident and improper manner; or compel him to make a final settlement, pay over legacies, and in short grant every relief sought for in this bill, unless it should be contended that it has not the power of appointing a receiver. If it should, however, it will be seen by reference to the Revised Code, pages 45 and 46, that that court has ample power, and it is made its duty when a proper case is made out, to require additional and counter security, and grant every relief required or asked in this case. We are not prepared to say that a

probate court in this state ever has taken property out of the hands of an executor or administrator and placed it in the hands of a receiver. Yet we presume no such case has ever occurred, for the very obvious reason that no case can arise in which there can be any necessity for such an order. They have frequently been removed by that court. And it is believed any case that will warrant the appointment of a receiver, will justify the removal of an executor or administrator. Hence the removal is the course always pursued in such cases. But if a case can arise that would require the appointment of a receiver to take charge of the property in the hands of an executor or administrator in progress of administration, we contend that the probate court has power to make the appointment. The powers of that court are in every respect as ample, as far as its jurisdiction extends, as those of a court of chancery. See the case of Blanton *v.* King *et al.* above referred to. If this be not law, then will parties be driven to the necessity of pursuing their remedies and seeking relief in two different courts, distant from each other, in one and the same cause. Then, too, may executors and administrators be compelled to leave the counties of their residence, in which they have qualified or administered, and come to the seat of government to defend their rights or answer the unfounded charges brought against them by impatient or avaricious legatees or hungry speculators, instead of having their rights and interests adjudicated in cheaper and more convenient courts provided for that purpose.

But suppose your honor should be satisfied that the probate court has no power to appoint a receiver, and this court should proceed to appoint one in the case now under consideration, and it should turn out on a full and final hearing before the probate court of Warren county, for we presume this court will not now overhual and thoroughly investigate all the defendant's settlements and accounts as executor, that the defendant has not mismanaged the estate, that his securities are not insolvent, and that the debts have not all been paid. What course would the defendant then have to pursue? Would he have to incur the trouble and expense of applying to this court to have the order appointing a receiver rescinded, and the property redelivered to him. We can perceive no other

remedy. Hence we think the impropriety of this court exercising jurisdiction of this case perfectly manifest.

Yet suppose this was the proper tribunal to hear and determine this controversy, upon what grounds do the complainants rest their application for the appointment of a receiver? It must be on the grounds of the insolvency of the defendant's securities, and that all the debts of the estate have been paid. It might be a sufficient answer to the first ground, that the bill does not even name one of the securities, John Crawford, and therefore, he having been received by the proper court, and that too when these very complainants were demanding' additional security, and they now omitting studiously to mention his name, the probate court must be presumed to have discharged its duty, and this court is bound to believe said security ample; yet even if that were not so, still the full and explicit negative of the answer sweeps that ground entirely from under them. The other ground we think they have been even more unfortunate if possible in their endeavor to maintain. Is it not strange if the debts have all been paid, that the complainants should so long have neglected to prosecute their petition filed about fifteen months ago in the probate court of Warren for the express purpose of coercing a final settlement, and getting possession of the property? Why have they thus slumbered on their rights? Why permit the executor to waste and squander the estate, when they could so easily prevent it. They do not pretend that the defendant has had that case continued from time to time, or that he has ever been either unwilling or unprepared for trial. On the contrary, it seems to have been entirely neglected, if not abandoned by them. Again, if the debts have all been paid, is it not passing strange that the complainants should have solemnly bargained and sold, not yet two months ago, to John S. Brien, one half of all the estate both real and personal, worth seventy-five thousand dollars or eighty thousand dollars, provided he would " pay off all the debts and legacies bequeathed in money," when it was well known said legacies amounted to only nine thousand five hundred dollars? If their allegation is true, why did they require of Mr. Brien a bond in the penalty of one hundred thousand dollars! that he should pay off the debts and legacies? Why say any thing about the debts at all, if none existed? Can it be presumed for a moment

that they would have been so stupid as to sell, or Mr. Brien so illiberal as to receive a property worth thirty-five thousand dollars or forty thousand dollars, for nine thousand five hundred dollars? We apprehend not. Indeed, when we reflect on the manner in which they have neglected the prosecution of their petition in the probate court, and the terms of said sale to Mr. Brien, we are forced to the conviction that they did not, and do not now believe that all the debts have been paid. We moreover think it more than probable that said sale will explain the reason of this remarkable and very extraordinary application.

Yet even if they do believe the debts have all been paid, the answer shows most clearly, and we think satisfactorly, that they have not; but that there is still a balance due of twenty or twenty five thousand dollars. Of the various other charges in the bill we deem it unnecessary here to speak. They are all fully met and refuted by the answer.

Of the result of this application we cannot entertain a doubt. For if there was no question about the jurisdiction of this court, it appears to us perfectly clear that the complainants have wholly failed to make out a case that will warrant the appointment of a receiver. When the appointment of a receiver is sought against an executor or administrator, it is necessary to establish by clear proof that there is some positive loss, or danger of immediate injury to those interested in the estate. See 2 Story's Equity, 135–6, top page. In this case it is not pretended that there is any danger of the executor's running off the negroes, or removing any of the property beyond the jurisdiction of this court. It is not charged that he ever failed to comply with any order made by the probate court, or that he ever objected to an examination of his accounts, or thorough investigation of his acts as executor by that court, nor is there any other charge contained in their bill, even if they were not all fully and explicitly denied, as they are by the answer, which we think will render the interposition of this court necessary. It is very clear that there is no proof before the court that the complainant's interests will be jeopardised, or the safety of the estate endangered by permitting it to remain in the hands of the executor, until their case can be heard and determined in the probate court of Warren; if indeed they intend ever prosecuting

it any further, which we admit we consider extremely doubtful. Nor can we believe the complainants apprehend the slightest danger of loss by the acts of the executor, but that all their clamor is a shallow pretence, raised for no other purpose than to get possession of the property.

The CHANCELLOR.

This case was submitted on motion for the appointment of a receiver. The answer is a full and circumstantial denial of the grounds laid by the bill for the appointment of a receiver. The answer is clearly evidence against the bill, and there are no affidavits or other form of testimony in support of the bill. These motions, like all other questions depending upon matters of fact, must be decided with reference to the evidence adduced on the one side or the other. A plaintiff is entitled to the appointment of a receiver only when the grounds laid in his bill are admitted by the answer or are established by his proofs. According to the practice in England, on motion for the appointment of a receiver before answer, the plaintiff is required to adduce affidavits of the truth of his bill. Smith's Chan. Prac. 630; 18 Ves. 283. That practice has not been adopted in this state. Here, where a bill is sworn to by the plaintiff, it has been decided sufficient; but where the motion is made on bill and answer, and the answer, as in this case, is a denial of the equity of the bill, there is nothing left upon which to sustain the motion. In such case, if the plaintiff wishes to succeed, he must introduce evidence to disprove the answer. The counsel for the motion referred to the defendant's account, settled by him with the probate court of Warren county, to show various errors, consisting in over charges and mischarges, and it was insisted that the charges of fraud and mismanagement in the bill were thus fully made out. I do not think it competent for me to look into the accuracy of the executor's account, with a view to support the grounds upon which this motion is made. The account appears to have been examined and allowed by the appropriate tribunal, which would make it at least *prima facie* evidence for the plaintiff in this collateral enquiry. But suppose the account to be erroneous, the probate court is the proper tribunal for its correction, upon a final settlement with the executor,

and this court cannot base any action upon a matter over which it has no jurisdiction or control. In the case of Vertner & Wife *v.* Griffith's Administrator, where there was a palpable and obvious error on the face of the administrator's account, settled with the probate court, the High Court of Errors, reversing the opinion of this court, held, that a court of equity had no jurisdiction of the matter.

Whether this court has the power to appoint a receiver in a case situated like the present, or whether that power can be exercised by the probate court, are questions not necessary to be decided in this case. In the case of Carmichael *et al. v.* Browder, 3 Howard 258, the court say: "As it may in some degree tend to prevent future useless litigation, we deem it proper to remark, that there are but few if any cases of administration, in which the powers of the probate court are not altogether adequate to the necessary relief. Indeed, its powers may be said to be co-extensive with those of a court of equity." Now as the power of a court of equity to appoint a receiver in a case like the present, would have been undoubted, it would seem according to that decision that the appointment might be made by the probate court. This is not the ground however upon which I decide the present motion. It is that the ground laid by the bill is denied by the answer, and is not supported by proof. The motion is overruled.